985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James H. DAVIS, Defendant-Appellant.
 No. 92-50041.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 3, 1993.*
Decided Feb. 8, 1993.
 
 Appeal from the United States District Court for the Central District of California; No. CR-91-0512-Kn-1, David V. Kenyon, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before BEEZER, BRUNETTI and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant James H. Davis appeals his jury conviction for three counts of bank fraud, in violation of 18 U.S.C. § 1344. We affirm.
 
 
 3
 * Appellant was general manager of Tillie's Memorial Chapel, a funeral parlor. To secure the prepayment of funeral expenses for its clients, Tillie's arranged for "pre-need" accounts to be established on its behalf at Life Savings Bank, in San Bernardino, California. Under this arrangement, Tillie's clients deposited funds into the "pre-need" trust accounts. These funds were withdrawable by an authorized Tillie's representative upon presentation of the client's death certificate to the bank. The withdrawn funds were then used to satisfy the burial expenses of the client.
 
 
 4
 Louise Pugh was a Tillie's customer who had established a pre-need trust account. Appellant personally negotiated Mrs. Pugh's pre-need contract on behalf of Tillie's. Mrs. Pugh's account contained approximately $2800. Upon Mrs. Pugh's death in 1989, her pre-need account was closed by an authorized Tillie's representative, and the proceeds of that account used to satisfy her burial expenses. After the pre-need account was closed on May 5, 1989, appellant learned that Life Savings Bank had a second account in Mrs. Pugh's name--a six-month certificate of deposit in the amount of $68,253.75, with a maturity date of August 14, 1989. This account, which was erroneously attributed to Mrs. Pugh through a clerical mistake, had a blank signature card bearing only the legend, "See authorization letter." Apparently, no such letter existed.
 
 
 5
 On August 19, 1989, appellant closed the certificate of deposit account and withdrew the $68,253.75. Appellant completed a withdrawal slip for that amount, inserted the account number, and received a check in the full amount payable to Tillie's. He immediately endorsed the check and caused the bank to issue one check payable to himself in the amount of $36,253.75, and one check payable to Frank Tillie Jr. in the amount of $32,000.
 
 
 6
 Appellant was charged and convicted of bank fraud in connection with this transaction, and he appeals.
 
 II
 
 7
 Appellant complains that the district court erred in denying his motion for judgment of acquittal at the close of the government's case. This denial was error, he claims, because the indictment failed sufficiently to charge and the government failed to prove a prima facie case of bank fraud.
 
 
 8
 We review a district court's denial of a motion for judgment of acquittal in the same manner as a challenge to the sufficiency of the evidence. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989) (citations omitted). "Consequently, we review the evidence presented against [appellant] in the light most favorable to the government to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We review de novo, however, the core question as to the sufficiency of the indictment. United States v. Dischner, 960 F.2d 870, 886 (9th Cir.1992). The statute under which appellant was indicted provided:
 
 
 9
 (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice--
 
 
 10
 (1) to defraud a federally chartered or insured financial institution; or
 
 
 11
 (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.
 
 
 12
 18 U.S.C. § 1344 (1984). Appellant claims that "the use of false or fraudulent pretenses" was the element charged in the indictment, and the government was therefore required to prove its case under that theory, citing United States v. Frankel, 721 F.2d 917 (3d Cir.1983). Because the government did not prove that he obtained the money by means of false or fraudulent pretenses, appellant maintains, he was entitled to a judgment of acquittal.
 
 
 13
 Even if the government proved and the jury convicted appellant only on the "scheme or artifice to defraud" theory, appellant's argument misses the mark. Appellant's indictment was not of the kind in Frankel which charged the defendant with a scheme to defraud by means of false representations. Frankel, 721 F.2d at 918-19. Rather, Appellant's indictment charged him with a scheme to defraud and a scheme to obtain money by false pretenses. Thus, even if we were to find (which we expressly decline to do) that appellant's transaction at Life Savings Bank did not involve a misrepresentation, "the indictment is not defective because the indictment alleges in the alternative that [appellant] engaged in a scheme to defraud, without reference to whether the scheme to defraud was carried out by means of a misrepresentation." United States v. Clausen, 792 F.2d 102, 105 (8th Cir.), cert. denied, 479 U.S. 858 (1986), cited in United States v. Bonanno, 852 F.2d 434, 441 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). In other words where, as here, "a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those acts conjunctively charged may establish guilt." Bonanno, 852 F.2d at 441.
 
 
 14
 Because the indictment charged in the conjunctive both bases of liability under the statute, this is not a case where the proof adduced against the defendant at trial was at variance from the conduct charged in the indictment. The district court therefore did not err in denying Appellant's motion for judgment of acquittal on this ground.
 
 III
 
 15
 Appellant also claims the evidence was insufficient to sustain his conviction.[1] "In reviewing the sufficiency of the evidence, we determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (citation omitted).
 
 
 16
 We conclude that the evidence was sufficient to sustain appellant's conviction under either theory of 18 U.S.C. § 3244 bank fraud. The evidence showing a scheme to defraud was circumstantial, but overwhelming. For instance, appellant personally negotiated the original pre-need account for Mrs. Pugh's funeral services. He also knew that the $2800 had been used for, and had satisfied, the expenses of Mrs. Pugh's funeral. He knew there was no pre-need contract with Mrs. Pugh other than the $2800 account. $68,000 was substantially in excess of the normal pre-need account balance. Appellant knew the $68,000 account was not a trust account, but a certificate of deposit account, with a specific maturation date. Finally, upon withdrawal of the money, appellant immediately directed over $36,000 of that money into his personal bank account at Security Pacific Bank.
 
 
 17
 There was also proof that appellant procured the $68,000 by means of false or fraudulent pretenses or representations. When questioned by the bank teller as to the unusually large amount of the withdrawal, appellant responded that Mrs. Pugh was "like family" to Tillie's, and that Mrs. Pugh "didn't really have any family in the area." Mrs. Pugh's son testified to the contrary, regarding both statements. Appellant's argument that the false statements are not material, because no reasonable teller would release that amount of money based on such representations, is of no avail. It is apparently not necessary that the bank actually relied on the false statements, United States v. Bonallo, 858 F.2d 1427, 1433 & n. 7 (9th Cir.1988), only that the statements have the "capacity to influence the lending institution." Theron v. United States Marshal, 832 F.2d 492, 497 (9th Cir.1987), cert. denied, 486 U.S. 1059 (1988). Appellant's statements had the capacity to influence and did influence the bank, and were thus material.
 
 
 18
 Circumstantial evidence is sufficient to establish guilt. United States v. Layton, 855 F.2d 1388, 1413 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989). Viewed in the light most favorable to the government we conclude that the evidence and reasonable inferences drawn therefrom amply support the jury's conviction for bank fraud under 18 U.S.C. § 1344.
 
 IV
 
 19
 Appellant argues that the district court erred in denying his motion for a bill of particulars. We review the district court's denial of a bill of particulars for abuse of discretion. United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir.1991).
 
 
 20
 According to appellant, a bill of particulars was necessary in order for him to learn "the theory of the government's case." Our review of the record reveals that the government's theory was not in doubt. The conduct charged was adequately specified in the indictment. United States v. Federbush, 625 F.2d 246, 252 (9th Cir.1980). The proof adduced by the government tracked the language of the indictment that appellant devised and executed a scheme to defraud Life Savings Bank. The introduction of evidence showing that appellant used misrepresentations in the course of that scheme did not, as appellant argues, constitute an "alternative theory of prosecution" to which he could not have been prepared to defend.
 
 
 21
 Because the instant indictment was sufficiently detailed to alert appellant to the essential facts of the crimes with which he was charged, Federbush, 625 F.2d at 252, and contained no ambiguities which could expose him to double jeopardy, United States v. Giese, 597 F.2d 1170, 1180 (9th Cir.), cert. denied, 444 U.S. 979 (1979), denial of appellant's motion for bill of particulars was proper. Furthermore, appellant has not established that he was prejudiced by the denial of his motion for a bill of particulars. United States v. Calabrese, 825 F.2d 1342, 1347 (9th Cir.1987). We find no abuse of discretion.
 
 V
 
 22
 Finally, appellant argues that the district court erred in instructing the jury that it could convict appellant if it found that he deliberately avoided learning the truth. At the close of the trial, the district court instructed the jury as follows:
 
 
 23
 You may find that defendant DAVIS acted knowingly if you find beyond a reasonable doubt that he was aware of a high probability that he was not entitled to the $68,253.75 in the certificate of deposit account held in the name of Louise Pugh and that he deliberately avoided learning the truth.
 
 
 24
 You may not find such knowledge, however, if you find that the defendant DAVIS actually believed that he was entitled to the $68,253.75 in the certificate of deposit account held in the name of Louise Pugh, or if you find that defendant DAVIS was simply careless.
 
 
 25
 It is not enough that the defendant was mistaken, recklessly disregarded the truth or negligently failed to inquire. Instead, the government must present evidence indicating that defendant purposely contrived to avoid learning all of the facts in order to have a defense if he did not act knowingly in the event of subsequent prosecution.
 
 
 26
 This is a modified version of the "deliberate ignorance" instruction upheld in United States v. Jewell, 532 F.2d 697 (9th Cir.) (en banc), cert. denied, 426 U.S. 951 (1976).
 
 
 27
 "Though we consider jury instructions as a whole to evaluate their adequacy, 'whether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo.' " United States v. Sanchez-Robles, 927 F.2d 1070, 1073 (9th Cir.1991) (quoting United States v. Spillone, 879 F.2d 514, 525 (9th Cir.1989), cert. denied, 111 S.Ct. 173, and 111 S.Ct. 210 (1990). We recognize, as did the court below, that a Jewell instruction must be given with great care, in light of the risk that the jury might convict on a standard of negligence. See United States v. Garzon, 688 F.2d 607, 609 (9th Cir.1982).
 
 
 28
 Appellant asserts that "the courts should not give a deliberate ignorance instruction to juries in cases in which there is evidence of actual knowledge." The mere existence of evidence of actual knowledge, however, does not make a Jewell instruction inappropriate.
 
 
 29
 If the evidence logically supports only a finding of actual knowledge--inconsistent with conscious ignorance, a Jewell instruction is inappropriate. See Sanchez-Robles, 927 F.2d at 1074; Garzon, 688 F.2d at 608. Where, as here, there is evidence of both actual knowledge and of deliberate ignorance, a Jewell instruction is proper. Sanchez-Robles, 927 F.2d at 1074; United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir.1988).
 
 
 30
 In this case, there was evidence that appellant was aware of a high probability that he was not entitled to the proceeds of the $68,000 certificate of deposit, but undertook to withdraw those funds anyway. As appellant himself testified, he planned to withdraw the funds and split it with Mr. Tillie, even though appellant recognized that "there was a mistake probably made." Because there was sufficient evidence presented that appellant deliberately closed his eyes and acted with wilful ignorance of the rightful ownership of the certificate of deposit account, there was ample basis for the Jewell instruction given. Cf. United States v. Henderson, 721 F.2d 276 (9th Cir.1983) (Jewell instruction proper in case of theft of timber from government land where defendant claimed ignorance regarding true boundaries of his land).
 
 
 31
 Furthermore, the final paragraph which the court added to the instruction reduced the risk that the jury would convict appellant based on an improper standard. Viewed in conjunction with the whole of the instructions given to the jury, we find no error.
 
 VI
 
 32
 Based upon the foregoing, Appellant's conviction for violation of 18 U.S.C. § 1344 is AFFIRMED.
 
 
 
 *
 This panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Although appellant mentioned the failure of the government's proof in the heading of his brief addressing the motion for judgment of acquittal, he failed to advance that claim with legally supported argument. We therefore do not address that claim. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988); Fed.R.App.Proc. 28(a)(4)